## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RASHAWN J. WILLIAMS,** | : | **No. 4:23-CV-0421** |
| **Petitioner** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **WARDEN ARMEL,** | : | |
| **Respondent** | : | |

## MEMORANDUM

Rashawn J. Williams initiated the above-captioned action by filing a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges his 2016 convictions and sentence entered by the Court of Common Pleas of Lycoming County, Pennsylvania, for—among other serious crimes—first-degree murder.  After careful consideration, the court is constrained to deny Williams' Section 2254 petition.

## I.    BACKGROUND

On June 1, 2014, during an altercation outside an after-hours club in Williamsport, Pennsylvania, Rashawn Williams shot and killed Aaron Lowry. Commonwealth v. Williams, 176 A.3d 298, 304 (Pa. Super. Ct. 2017).  Williams then fled to High Point, North Carolina, where he was apprehended a few days later. Id.  He was promptly extradited to Pennsylvania and charged with

homicide, aggravated assault, several firearms offenses, simple assault, terroristic threats, and flight to avoid apprehension or prosecution.  Id.

Williams steadfastly maintained that Lowry was the aggressor and that he had shot Lowry in self-defense, and this was his theory of defense at trial.  See id. at 308-11.  Prior to and during trial, Williams was represented by William Miele and Nicole Spring, attorneys from the Lycoming County Public Defender's Office. See Commonwealth v. Williams, No. 1482 MDA 2021, 2022 WL 3443669, at *1 (Pa. Super. Ct. Aug. 17, 2022).

At some point before trial, the Commonwealth extended a plea offer to Williams that required an open guilty plea to third-degree murder, which conviction could carry up to a 20-year minimum and a 40-year maximum term of imprisonment.  Id., at *1, *8.  According to Williams, Miele and Spring discouraged him from taking the plea deal, assuring him that it was "very unlikely" that he would be convicted of first-degree murder, and—in the worst-case scenario in their opinion—a jury would find him guilty of third-degree murder, which was the Commonwealth's plea offer anyway.  Id., at *8.

Williams rejected the plea offer and went to trial.  Id., at *1.  Following a six-day jury trial, he was found guilty of all charged offenses, including first-degree murder.  Id., at *2 & n.7.  The sentencing court imposed the mandatory minimum

sentence of life imprisonment for the murder conviction and an aggregate,

concurrent term of 12 to 24 years' incarceration for the lesser offenses. Id.

Williams appealed, raising eight claims for review. See Williams, 176 A.3d

at 305. He challenged the sufficiency and weight of the evidence and alleged

various trial court errors or abuse of discretion. Id. In a precedential opinion, the

Superior Court of Pennsylvania rejected Williams' claims and affirmed his

judgment of sentence. See id. at 303, 326. On June 19, 2018, the Supreme

Court of Pennsylvania denied Williams' petition for allowance of appeal.

Commonwealth v. Williams, No. 22 MAL 2018, 187 A.3d 908 (Pa. June 19, 2018)

(table).

Williams then filed a counseled petition under Pennsylvania's Post

Conviction Relief Act (PCRA), 42 PA. CONS. STAT. § 9541 et seq. See Williams,

No. 1482 MDA 2021, 2022 WL 3443669, at *2. Williams' PCRA counsel—Robert

Hoffa, Esquire—subsequently filed an amended PCRA petition on September 30,

2019, and finally a supplemental amended PCRA petition on January 28, 2021.

Id.

On September 29, 2021, an evidentiary hearing was held on several of

Williams' post-conviction claims. Id., at *3. The PCRA court denied Williams'

petition the following month. See id. Williams appealed that denial to the

Pennsylvania Superior Court, raising three claims of ineffective assistance of trial

counsel. Id. The Superior Court rejected those claims and affirmed the PCRA court's denial of post-conviction relief. Id., at *1, *9-10. The Pennsylvania Supreme Court again denied Williams' petition for allowance of appeal. Commonwealth v. Williams, No. 374 MAL 2022, 292 A.3d 549 (Pa. Feb. 7, 2023) (table).

In March 2023, Williams lodged the instant Section 2254 petition in this court. (See generally Doc. 1). The court issued its standard notice pursuant to Mason v. Myers, 208 F.3d 414 (3d Cir. 2000), informing Williams that he must raise all claims for relief in his Section 2254 petition and giving him the option to withdraw his petition and file an all-inclusive amended petition or stand on his petition as filed. (Doc. 5). Williams did not respond to that Order, and his failure to respond was construed as a decision to have his petition ruled on as filed. (See Doc. 5 at 3 ¶ 2; id. at 5; Doc. 6 at 1). That Section 2254 petition is fully briefed and ripe for disposition.

## II.    STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. §§ 2241-2254, mandates that petitioners demonstrate that they have "exhausted the remedies available in the courts of the State" before seeking federal habeas relief. Id. § 2254(b)(1)(A). An exhausted claim is one that has been "fairly presented" to the state courts "by invoking one complete round of the

State's established appellate review process," and which has been adjudicated on the merits. Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999)); see also Johnson v. Williams, 568 U.S. 289, 302 (2013).

If a state prisoner has not fairly presented a claim to the state courts "but state law clearly forecloses review, exhaustion is excused, but the doctrine of procedural default may come into play." Carpenter, 296 F.3d at 146 (citations omitted). Generally, if a prisoner has procedurally defaulted on a claim by failing to raise it in state-court proceedings, a federal habeas court will not review the merits of the claim, even one that implicates constitutional concerns. Martinez v. Ryan, 566 U.S. 1, 9 (2012) (citing Coleman v. Thompson, 501 U.S. 722, 747-48 (1991); Wainwright v. Sykes, 433 U.S. 72, 84-85 (1977)).

A few limited exceptions to this rule exist. One exception is that "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." Id. at 10 (citing Coleman, 501 U.S. at 750). "Cause for a procedural default exists where something external to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule." Maples v. Thomas, 565 U.S. 266, 280 (2012) (alterations in original) (citations and internal quotation marks omitted). To establish prejudice, a petitioner must show not

merely that there were errors that created a possibility of prejudice, but that they "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Holland v. Horn, 519 F.3d 107, 112 (3d Cir. 2008) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). If cause and prejudice are established, the federal court reviews the claim de novo "because the state court did not consider the claim on the merits." Bey v. Superintendent Greene SCI, 856 F.3d 230, 236 (3d Cir. 2017), cert. denied sub nom. Gilmore v. Bey, 138 S. Ct. 740 (2018) (mem.) (citation omitted).

Another rare exception that will excuse a procedural default is if the petitioner can show that "failure to consider the claim will result in a fundamental 'miscarriage of justice.'" Carpenter, 296 F.3d at 146 (quoting Coleman, 501 U.S. at 750). To satisfy the "fundamental miscarriage of justice" exception, a petitioner typically will have to show actual innocence. Leyva v. Williams, 504 F.3d 357, 366 (3d Cir. 2007) (citation omitted).

## III.  DISCUSSION

At the outset, the court must determine which of Williams' many claims are properly raised in his Section 2254 petition. Williams attempts to assert *twenty-two* grounds for relief between his petition and various attachments. (See

generally Doc. 1; Doc. 1-1; Doc. 1-2; Doc. 1-3).[1]  These claims mirror many of the arguments raised on direct appeal or during his PCRA proceedings.

Notably, Williams' federal habeas claims are asserted in the form of questions for review, lacking any additional factual support or legal authority. Indeed, *none* of his twenty-two claims are briefed, and nowhere does Williams acknowledge the relevant habeas standards of review, cite to any case law, or assert any type of argument as to why his various claims entitle him to federal habeas relief.  Instead, Williams appears to merely copy and paste the claims he raised in state court.

Additionally, and critically, only eleven of these claims were raised during state-court appellate review.  Thus, only eleven of Williams' twenty-two claims could possibly have been exhausted by being "fairly presented" to the state courts "by invoking one complete round of the State's established appellate review process[.]"  Carpenter, 296 F.3d at 146 (quoting O'Sullivan, 526 U.S. at 844-45).

First, there are the eight claims Williams raised on direct appeal.  See Williams, 176 A.3d at 305.  Those same eight claims are asserted, verbatim, in attachments to Williams' Section 2254 petition.  (See Doc. 1-2 at 1; Doc. 1-3 at

---

[1] Many of the claims in Williams' petition and attachments are duplicative.  The court has carefully reviewed Williams' filings and determined that he is attempting to raise twenty-two separate grounds for relief.

1).  Next, there are the three claims of ineffective assistance of trial counsel that were raised in Williams' PCRA appeal.  See Williams, No. 1482 MDA 2021, 2022 WL 3443669, at *3.  Those three ineffective-assistance claims are asserted in Williams' petition, (Doc. 1 at 5, 7, 8), and in one of his attachments thereto, (Doc. 1-1).

Thus, exactly half of Williams' claims have never been presented to the state courts through one complete round of appellate review with a decision on the merits, meaning they are procedurally defaulted.  Williams does not discuss, much less establish, cause or prejudice to excuse his procedural default, so those eleven claims are simply unreviewable.  See Martinez, 566 U.S. at 9.

This is not the end of the analysis.  Of the eight claims raised on direct appeal and reasserted in this habeas action, only four are potentially viable federal habeas claims.  The other four direct-appeal claims, which are discussed in detail below, are unreviewable under Section 2254.

As part of his direct appeal, Williams raised three issues related to trial court evidentiary rulings.  See Williams, 176 A.3d at 305.  In issue VI, Williams claimed that the trial court "abuse[d] its discretion" by failing to suppress Williams' North Carolina medical records "because the Commonwealth [had] unlawfully obtained them."  Id.  In issue VII, he contended that the trial court "abuse[d] its discretion" by excluding various evidence proffered by the defense.  Id.  And in

issue VIII, he argued that the trial court "err[ed]" by admitting certain evidence proffered by the prosecution.  Id.  As noted above, Williams reasserts these claims, word for word, in attachments to his Section 2254 petition.

The problem for Williams is that challenges to evidentiary rulings based on state law and state rules of evidence are not cognizable on federal habeas review.  See Estelle v. McGuire, 502 U.S. 62, 67 (1991) (explaining that inquiry regarding evidentiary ruling based on state law "is no part of a federal court's habeas review of a state conviction"); see also Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) ("[A] state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.").  Put simply, "federal habeas corpus relief does not lie for errors of state law."  Estelle, 502 U.S. at 67 (citations omitted).

Nowhere in his state-court filings or the instant Section 2254 petition does Williams allege that the trial court's evidentiary rulings resulted in errors of a *constitutional* magnitude.  See Brief of Petitioner-Appellant at 25-39, Commonwealth v. Williams, 176 A.3d 298 (Pa. Super. Ct. 2017) (No. 1692 MDA

2016), 2017 WL 6342710, at *25-39[2]; see also Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir. 2001) ("A federal habeas court . . . cannot decide whether the evidence in question was properly allowed under the state law of evidence. A federal habeas court is limited to deciding whether the admission of the evidence rose to the level of a due process violation[.]"). Williams' state-court evidentiary challenges alleged "abuse of discretion" or trial court error; he never claimed that the evidentiary rulings violated the constitution, due process, or his right to a fair trial. Cf. McCandless v. Vaughn, 172 F.3d 255, 262 (3d Cir. 1999) ("[Petitioner] presented his 'prosecutorial vouching' claim to Pennsylvania's courts as an evidentiary law challenge and not as a violation of a federal or constitutional right. He did not assert this claim in terms that bring to mind a constitutional right. On the contrary, his Superior and Pennsylvania Supreme Court briefs articulated this claim in terms similar to a Rule 403 objection, contending that the cooperation

---

[2] On direct appeal, Williams argued that the Commonwealth procured his North Carolina medical records in violation of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub. L. 104-191, 110 Stat. 1936 (1996), and thus the records should have been suppressed. See Williams, 176 A.3d at 315-19. To the extent that Williams' Section 2254 petition can be construed as asserting a violation of federal law, i.e., HIPAA, the state court's determination on this claim was not an unreasonable application of federal law. As the Pennsylvania Superior Court explained, "suppression is not an appropriate remedy for HIPAA violations." Id. at 318-19 (quoting "Trial Court Opinion (Suppression), 12/23/15, at 3-7" (collecting cases)). Moreover, if any entity violated HIPAA, it would have been the North Carolina hospital rather than the prosecution, as neither the Commonwealth nor the District Attorney's Office is a "covered entity" under HIPAA. Id. at 317; 45 C.F.R. §§ 160.103 (defining "Covered entity"), 164.502(a). Accordingly, suppression would be an inappropriate sanction for an alleged HIPAA violation that was not committed by the government. See United States v. Elliott, 676 F. Supp. 2d 431, 439-40 (D. Md. 2009).

agreement testimony was 'irrelevant' and 'prejudicial' and therefore improperly admitted. Nowhere are the terms 'constitution,' 'due process' or even 'fair trial' mentioned.").

Like the petitioner in <u>McCandless v. Vaughn</u>, Williams never contended in state court that the at-issue evidentiary rulings violated the constitution, due process, or his right to a fair trial. Consequently, the state courts had no opportunity to consider any such constitutional claim. Logically, this court cannot review the state-court decision to determine whether it was "contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), if the state court was never presented with a federal claim in the first instance. Accordingly, Williams' three direct-appeal challenges to the trial court's evidentiary rulings (issues VI, VII, and VIII) are not reviewable under Section 2254.

Additionally, in direct-appeal issue IV, Williams challenged the weight of the evidence with respect to his first-degree murder conviction. <u>See Williams</u>, 176 A.3d at 305. He reasserts that same claim in his Section 2254 petition. (<u>See</u> Doc. 1-2 at 1). But challenges to the weight of the evidence—as opposed to the sufficiency of the evidence—are not cognizable in federal habeas corpus actions. <u>See Tibbs v. Florida</u>, 457 U.S. 31, 37-45 (1982) (explaining that weight-of-the-evidence claims raise questions of credibility and are materially different from

claims that evidence was insufficient to support a conviction); Hyde v. Shine, 199 U.S. 62, 84 (1905) ("In the Federal courts, . . . it is well settled that upon habeas corpus the court will not weigh the evidence[.]"); Davis v. Superintendent Frackville SCI, No. 22-1513, 2022 WL 4289603, at *1 (3d Cir. 2022) (nonprecedential) (denying certificate of appealability and noting that petitioner's "weight-of-the-evidence claim is not cognizable on federal habeas review" (citation omitted)); McKinnon v. Sup't, Great Meadow Corr. Facility, 422 F. App'x 69, 75 (2d Cir. 2011) (nonprecedential) (noting that "the argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus," and "as a matter of federal constitutional law[,] a jury's verdict may only be overturned if the evidence is insufficient to permit any rational juror to find guilt beyond a reasonable doubt" (citations omitted)); Douglas v. Hendricks, 236 F. Supp. 2d 412, 435-36 (D.N.J. 2002) ("A claim that the verdict is against the weight of the evidence is essentially a matter of state law, and does not raise a federal constitutional question unless the record is completely devoid of evidentiary support in violation of Petitioner's due process." (citation omitted)).

The court is therefore left with only seven claims for review that were exhausted in state court and are cognizable under Section 2254: (1) sufficiency of the evidence as to specific intent to kill for first-degree murder; (2) sufficiency

of the evidence as to malice for aggravated assault; (3) sufficiency of the evidence as to the Commonwealth disproving self-defense; (4) trial court failure to instruct the jury on "heat of passion voluntary manslaughter"; (5) ineffective assistance of trial counsel for failing to call eyewitness Sheriah Worthy to establish self-defense; (6) ineffective assistance of trial counsel for failing to call an expert toxicologist to testify that "the victim was the aggressor due to his level of intoxication in combination with the illegal controlled substances in his system"; and (7) ineffective assistance of trial counsel for failing to properly advise Williams that he risked a first-degree murder conviction and life sentence if he rejected the Commonwealth's plea offer.  After careful review, the court finds that none of these claims warrants relief.

## A.    Grounds One, Two, and Three – Sufficiency of Evidence

On federal habeas review, the level of deference afforded to a state court's decision regarding sufficiency of the evidence is considerable.  See Coleman v. Johnson, 566 U.S. 650, 651 (2012).  "[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"  Id. (quoting Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam)).  Moreover, "[b]ecause rational people can sometimes disagree, the inevitable consequence of this

settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." <u>Cavazos</u>, 565 U.S. at 2.

Williams cannot satisfy the extremely demanding requirement of showing that the state court's sufficiency-of-the-evidence determinations were "objectively unreasonable." Both the trial court and the Superior Court performed extensive sufficiency-of-the-evidence reviews and determined that the record evidence was sufficient to uphold Williams' convictions for first-degree murder and aggravated assault.[3]

As to first-degree murder and the specific intent to kill, the state court first noted the long-settled maxim under Pennsylvania law that "[a] jury may infer the intent to kill 'based on the accused's use of a deadly weapon on a vital part of the victim's body.'" <u>Williams</u>, 176 A.3d at 307 (quoting <u>Commonwealth v. Sanchez</u>, 36 A.3d 24, 37 (Pa. 2011)). The panel then reviewed the evidence showing that Williams shot the victim in the chest at a close distance and that the bullet had injured the victim's left lung, sternum, ribs, and the pericardium surrounding the heart, causing bleeding that eventually led to a fatal lack of oxygen to the victim's brain and heart. <u>Id.</u> The court concluded that because "the evidence clearly

---

[3] Although Williams appears to raise a sufficiency challenge to "third degree [sic] murder," (<u>see</u> Doc. 1-2 at 1), he was never convicted of this offense. The Superior Court explicitly noted this fact and thus "ma[d]e no further comment regarding third-degree murder." <u>Williams</u>, 176 A.3d at 305 n.4. This court will do likewise.

established that [Williams] used a firearm on a vital organ of the victim's body, the evidence was sufficient to establish specific intent to kill necessary for first[-] degree murder." Id. (quoting "Pa.R.A.P. 1925(a) Opinion, 2/6/17, at 22").

Nothing about the state court's determination of the sufficiency of the evidence concerning the specific intent to kill is objectively unreasonable. Williams, moreover, does not provide any argument or legal authority to the contrary. Because Pennsylvania has long held that the specific intent to kill can be inferred from the use of a deadly weapon on the vital part of a victim's body, and there was more than sufficient evidence establishing that such events occurred in this case, Williams' first sufficiency-of-the-evidence claim is meritless.

As to aggravated assault, Williams argued in state court that the evidence was insufficient to show the required *mens rea* of malice. Id. at 305. He repeats this claim in his Section 2254 petition. (Doc. 1-2 at 1). However, malice can also be inferred "based on the defendant's use of a deadly weapon on a vital part of the victim's body." See Williams, 176 A.3d at 308 (quoting Commonwealth v. Hitcho, 123 A.3d 731, 746 (Pa. 2015)). Thus, based on the above conclusion concerning sufficiency of the evidence as to the specific intent to kill, the evidence at trial was likewise sufficient to establish malice for aggravated assault. See id.

Williams' third claim involving the sufficiency of the evidence alleges that the Commonwealth failed to disprove beyond a reasonable doubt that he had acted in self-defense. The Pennsylvania Superior Court adopted the trial court's thorough analysis of this challenge and affirmed that the Commonwealth had sustained its burden at trial to prove beyond a reasonable doubt that Williams was not acting in self-defense when he shot and killed Lowry. Id. at 309-11.

In particular, the state court noted that the Commonwealth could sustain its burden if it proved any of the following: "that the slayer was not free from fault in provoking or continuing the difficulty which resulted in the slaying; that the slayer did not reasonably believe that he was in imminent danger of death or great bodily harm, and that it was necessary to kill in order to save himself therefrom; or that the slayer violated a duty to retreat or avoid the danger." Id. at 309 (quoting Commonwealth v. Mouzon, 53 A.3d 738, 740-41 (Pa. 2012)). Notably, Williams had a prior conviction for robbery, so his possession of the firearm was illegal and he could not claim that he had no duty to retreat under the "stand your ground" provision of the Pennsylvania Crimes Code that covers use of force in self-protection, 18 PA. CONS. STAT. § 505(b)(2.3). See Williams, 176 A.3d at 310 (citing, inter alia, 18 PA. CONS. STAT. § 6105).

Williams, therefore, had a duty to retreat if he could safely do so. Id. And the state court observed that, when viewing the evidence in a light most

favorable to the Commonwealth, there was sufficient evidence to establish that he had an opportunity to retreat rather than use deadly force. Id. The court further noted that although several defense witnesses testified at trial that the victim had brandished a knife, there was countervailing evidence presented (which the jury could have reasonably believed) showing that the victim was unarmed and at most attacked Williams with a closed fist. Id. at 311. If the jury believed that the victim was unarmed and only punched Williams, that conclusion could have disproved self-defense by establishing that Williams did not "*reasonably* believe that he was in imminent danger of death or great bodily harm, and that it was necessary to kill in order to save himself therefrom[.]" Id. at 309 (emphasis added) (quoting Mouzon, 53 A.3d at 740).

Once again, Williams does not provide any argument or evidence as to why the state court's conclusions about the sufficiency of the Commonwealth's rebuttal of self-defense were objectively unreasonable. Nor can this court independently discern any such unreasonableness. The Commonwealth proffered sufficient evidence to establish two of the three ways to negate self-defense, and thus it did not "fail to disprove" Williams' claim thereof.

## B.    Ground Four – Absence of Jury Instruction

In Williams' fifth issue on direct appeal, he alleged that the trial court had "abused its discretion" by declining to instruct the jury on "heat of passion

17

voluntary manslaughter." Id. at 305. This claim is asserted verbatim in attachments to his Section 2254 petition. (See Doc. 1-2 at 1; Doc. 1-3 at 1).

The trial court rejected Williams' claim of error, reasoning that because there was "no evidence" presented establishing that Williams "was overcome by a sudden and intense passion," there was no basis for providing the heat-of-passion voluntary manslaughter instruction. Williams, 176 A.3d at 315 (quoting, inter alia, "Trial Court Opinion (Post-Sentence Motions), 10/11/17, at 11" (citing Commonwealth v. Taylor, 876 A.2d 916, 925 (Pa. 2005) ("It is settled that a trial court should not instruct the jury on legal principles which have no application to the facts presented at trial. Rather, there must be some relationship between the evidence presented and the law upon which an instruction is requested."))). The Superior Court affirmed this decision, explaining that it had independently reviewed the trial testimony and had failed to locate any evidence that Williams had "acted out of a sudden rage, terror, resentment, or any other passion or emotion," rather than simply in self-defense. Id.

The insurmountable hurdle for Williams' "abuse of discretion" claim is that it is not cognizable on federal habeas review. As with his various evidentiary challenges, Williams *never* argued in state court (or in this court, for that matter) that the absence of the heat-of-passion voluntary manslaughter instruction resulted in a constitutional or due process violation. Any such constitutional

claim, therefore, is procedurally defaulted, and Williams has not discussed or established cause or prejudice to excuse his default.

Even if Williams had properly raised this claim in state court by contending that his constitutional rights had been violated, "the absence of an instruction" must "infect[] the entire trial with unfairness" such that it constitutes a due process infringement. Albrecht v. Horn, 485 F.3d 103, 129 (3d Cir. 2007) (citation omitted). Furthermore, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977). Here, it is difficult to conclude that the absence of the heat-of-passion voluntary manslaughter instruction infected Williams' *entire* trial with unfairness. This is especially true when the trial court instructed the jury on both self-defense as well as unreasonable-belief (imperfect self-defense) voluntary manslaughter, see Brief of Petitioner-Appellant at 20, Commonwealth v. Williams, 176 A.3d 298 (Pa. Super. Ct. 2017) (No. 1692 MDA 2016), 2017 WL 6342710, at *20, yet the jury still convicted Williams of first-degree murder. Williams, moreover, has not provided any argument, evidence, or legal authority establishing that the absence of the heat-of-passion instruction amounted to a due process violation.

To summarize, this ground for relief is unreviewable because Williams never alleged a constitutional violation in state court or received a decision on the

merits of such a claim.  Any due process claim based on the absence of this jury instruction, therefore, is procedurally defaulted and unreviewable.  Even if the court could review this claim, Williams has failed to meet his burden to show that the absence of the instruction tainted his entire trial with unfairness.  Thus, the court cannot grant habeas relief on this ground.

### C.    Grounds Five, Six, and Seven – Ineffective Assistance

Williams' final three claims allege trial counsel ineffectiveness.  A collateral attack based on ineffective assistance of counsel in violation of the Sixth Amendment is governed by the familiar two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To prevail on such a claim, a criminal defendant must demonstrate that (1) counsel's representation fell below an objective level of reasonableness based on prevailing professional norms, and (2) the deficient representation was prejudicial. Id. at 687-88.  The defendant bears the burden of proving both prongs. See id. at 687.

In determining whether counsel has satisfied the objective standard of reasonableness under the first prong, courts must be highly deferential toward counsel's conduct. Id. at 689.  There is a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance. See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989).  Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential

20

standard to be applied in scrutinizing counsel's performance." Id. at 711 (citing

Strickland, 466 U.S. at 689-90). To satisfy the prejudice prong, the defendant

must establish a reasonable probability that, but for counsel's errors, the

outcome of the proceeding would have been different. Strickland, 466 U.S. at

694. The district court need not conduct its analysis of the two prongs in a

particular order or even address both prongs of the inquiry if the defendant

makes an insufficient showing in one. See id. at 697; United States v. Lilly, 536

F.3d 190, 196 (3d Cir. 2008).

When a claim of ineffective assistance of counsel has been exhausted in

state court, review of that claim by a federal habeas court is significantly

circumscribed. The federal court does not review the ineffectiveness claim *de*

*novo*; rather, "[t]he pivotal question is whether the state court's application of the

Strickland standard was unreasonable." Harrington v. Richter, 562 U.S. 86, 101

(2011); Collins v. Sec'y of Pa. Dep't of Corr., 742 F.3d 528, 546-47 (3d Cir.

2014). Under this "doubly" deferential standard, "so long as fairminded jurists

could disagree on the correctness of the state court's decision," a state court's

determination that a Strickland claim lacks merit precludes federal habeas relief.

Harrington, 562 U.S. at 101, 105 (citation omitted).

In his first[4] ineffective-assistance claim, Williams contends that his trial counsel was ineffective for failing to call eyewitness Sheriah Worthy to establish that he had acted in self-defense. See Williams, No. 1482 MDA 2021, 2022 WL 3443669, at *3, *4.  As the Superior Court noted, Worthy had been subpoenaed to appear at trial and indeed was physically present and willing to testify.  Id., at *4.  However, Williams' trial counsel did not call her as a witness.  Id.

The PCRA court included this claim as part of its September 2021 evidentiary hearing.  Id.  There, Attorney Spring testified that she did not believe that Worthy would be a credible witness, in particular because Worthy had made a prior inconsistent statement to police that "she did not see anything, she did not know anything, and she was intoxicated."  Id., at *5 (quoting "PCRA Ct. Op. at 5-6").  Attorney Spring was also concerned that Worthy would be cross-examined about her prison telephone conversations with Williams while he was in pretrial detention, the content of which could have made it appear as though her testimony was fabricated after the fact.  Id., at *6.  Accordingly, the state court found that Williams' trial counsel had proffered a reasonable basis for not calling Worthy as a witness.  Id.  It further concluded that Williams had failed to show prejudice from the decision.  Id.

---

[4] The court will address Williams' ineffective-assistance claims in the order they were presented to, and adjudicated by, the Pennsylvania Superior Court.

The state court's determination on this ineffective-assistance claim was a reasonable application of <u>Strickland</u>.  This is not the type of case where trial counsel had no conceivable reason for failing to call an available eyewitness or could not recall a basis for their decision.  Rather, Williams' trial counsel made an informed, strategic decision not to call Worthy.  That decision was based on counsel's reasonable assessment that Worthy would be impeached by her prior inconsistent statement to police and by the prison phone calls, that the jury would find Worthy's testimony incredible and contrived, and thus that the testimony would do more harm than good.  <u>See</u> <u>Ellison v. United States</u>, __ F.4th __, __ n.13, 2024 WL 4611955, at *5 n.13 (3d Cir. 2024) (quoting <u>United States v. Teague</u>, 953 F.2d 1525, 1533 n.9 (11th Cir. 1992), for the proposition that there are sometimes "good tactical reasons" for excluding a witness, such as "if the prosecutor might impeach the [witness] using a prior inconsistent statement").

This is the kind of strategic decision trial attorneys must frequently make, and nothing here indicates that Williams' counsel's conduct fell below the constitutional minimum.  After all, habeas courts must be highly deferential toward counsel's reasonable strategic choices.  Furthermore, the court observes that Williams' trial counsel proffered testimony from multiple other defense eyewitnesses, including Rashawn Ruley, Rasheem Johnson, and the after-hours club bouncer, Robert Eigenbrod.  <u>See</u> <u>Williams</u>, No. 1482 MDA 2021, 2022 WL

3443669, at *2. It was not the case that Worthy was the only eyewitness to the incident and defense counsel kept her on the sidelines without a valid reason.

Moreover, the court would be remiss if it did not once again mention that Williams, who bears the burden of establishing that habeas relief is due, has not provided any argument or legal authority showing that the state court's determination on this claim was an unreasonable application of Strickland. This court does not review exhausted ineffective-assistance claims de novo. Rather, under the applicable doubly deferential standard of review, habeas relief can only be granted if the state court unreasonably applied clearly established federal law. It did not, so relief is not warranted on Williams' initial Sixth Amendment claim.

In Williams' second ineffective-assistance claim, he argues that his trial counsel was deficient for failing to call an expert toxicologist to testify as to the victim being the aggressor due to the victim's significant intoxication with alcohol and illicit controlled substances. This claim requires only brief discussion.

As both the Superior Court and PCRA court noted, the prosecution essentially admitted that Lowry (the victim) was the aggressor who had initiated the altercation. See id., at *7, *8. Furthermore, the proposed expert testimony could have undercut Williams' theory that Lowry—who was allegedly intoxicated—had the wherewithal to fold the knife and return it to his pocket. Id., at *8. The state court thus concluded that even assuming for the sake of

argument that trial counsel's decision not to call an expert toxicologist was constitutionally infirm, Williams had failed to show that he was prejudiced by this allegedly deficient conduct. Id.

That determination is not only a reasonable application of Strickland, it is the correct one. Williams simply has not demonstrated how he was prejudiced by his counsel's performance if the purpose of the expert toxicologist's testimony was to establish a fact that had already been conceded at trial by the prosecution.

In his final ineffective-assistance claim, Williams argues that trial counsel was ineffective for "failing to advise [him] of a proposed plea offer from the Commonwealth." (Doc. 1 at 5; Doc. 1-1). This, however, is not the claim that he exhausted in state court, nor is it factually accurate. On PCRA appeal, Williams presented this ineffectiveness claim as "failing to properly advise [him] that the evidence against him supported a First Degree Murder conviction and that he risked a First Degree Murder [c]onviction and a life sentence if he rejected the Commonwealth's offer to plead guilty to the charge of Third Degree Murder for a sentence of no more than twenty to forty years['] incarceration." (Doc. 10-6 at 8); Williams, No. 1482 MDA 2021, 2022 WL 3443669, at *3. There is no evidence to support the assertion that Williams' attorneys failed to advise him of a plea offer. Rather, the undisputed record evidence shows that the Commonwealth's offer

was relayed to Williams and he made the final decision to reject it after consultation with his attorneys.  See Williams, No. 1482 MDA 2021, 2022 WL 3443669, at *1, *8.

When reviewing the ineffectiveness claim that was actually exhausted in state court, the court finds that it warrants no relief.  First, the state court identified the proper constitutional standard concerning ineffective assistance with respect to rejection of a plea deal.  See id., at *9 (quoting Commonwealth v. Steckley, 128 A.3d 826, 832 (Pa. Super. Ct. 2015) (citing Lafler v. Cooper, 566 U.S. 156, 164 (2012) ("In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.")).

The Superior Court then noted that the PCRA court had found that Williams had never established that he would have accepted the open plea to third-degree murder if his attorneys had advised him differently.  Id. (quoting "PCRA Ct. Op. at 8-9").  The panel also determined that counsel's advice to reject the plea offer was not unreasonable at the time.  Id.  As the PCRA court explained,

> Under the facts and circumstances of this case, a verdict of third-degree murder was much more likely than first-degree murder. In trials, however, as with most things in life, there are no guarantees. A first-degree murder conviction was possible and [Williams] was aware of that possibility when he rejected the plea offer. [Williams] rolled the dice and lost. Hindsight regret for his decision, however, does not prove ineffectiveness.

Id. (quoting "PCRA Ct. Op. at 8-9").

Once again, the state court's determination on this claim was not an unreasonable application of federal law. As the state court reasoned, Williams had been properly informed of the Commonwealth's plea offer, knew that he faced a first-degree murder charge and thus could be found guilty of that offense (even though defense counsel believed that result was unlikely), had received trial counsel's professional opinion regarding the offer, and ultimately chose to reject the deal and go to trial. Williams "rolled the dice and lost." Id.

Yet the fact that Williams was unsuccessful at trial does not mean that his attorneys violated the constitution. None of Williams' allegations in his PCRA proceedings or in this court establish that his trial attorneys performed below the constitutional minimum. While their prediction about the outcome of a jury trial was ultimately incorrect, the constitution does not require defense attorneys to be prophetic, only that their advice fall within the "wide range of professional assistance" demanded from criminal lawyers. See Strickland, 466 U.S. at 688-89; McMann v. Richardson, 397 U.S. 759, 769-70 (1970) (explaining that trial

presents "unavoidable uncertainty" with regard to the trier of fact's interpretation

of evidence, finding of facts, and determination of truth, and that because such

trial-specific questions "cannot be answered with certitude," the decision of

whether "to plead guilty before the evidence is in frequently involves the making

of difficult judgments").  As the state court properly held, Williams' trial attorneys'

conduct fell within the wide range of professional assistance and did not violate

the Sixth Amendment.  Williams, No. 1482 MDA 2021, 2022 WL 3443669, at *9

(quoting "PCRA Ct. Op. at 8-9").

The state court's determination on this third Strickland claim was not

unreasonable.  Williams, moreover, has not argued otherwise.  His final

ineffective-assistance claim, therefore, does not warrant relief.

## IV.    CONCLUSION

Based on the foregoing, the court must deny Williams' petition for a writ of

habeas corpus under 28 U.S.C. § 2254.  Many of Williams' claims are

procedurally defaulted and unreviewable.  And none of the claims that have been

properly exhausted in state court and raised in the instant Section 2254 petition

satisfies the stringent requirements for federal habeas relief.

The court will likewise deny a certificate of appealability, as Williams has

failed to make a substantial showing of the denial of a constitutional right, see 28

U.S.C. § 2253(c)(2), or that "jurists of reason would find it debatable" whether this

court's procedural rulings are correct, <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  An appropriate Order follows.

Date: _____

BY THE COURT:

_____
JUDGE JULIA K. MUNLEY
United States District Court